### SAMUEL BROS. & CO. v. HOSTETTER CO.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1902.)

1. UNFAIR COMPETITION—EVIDENCE TO ESTABLISH.

The testimony of two witnesses employed by complainant that they went to the wholesale liquor store of defendant, where they were sold by a clerk, in bulk, what he represented to be complainant's bitters, but which was in fact a spurious article made to imitate that of complainant in appearance, taste, and smell, and that they were also furnished by the clerk with empty bottles having thereon complainant's label and trade-mark, to be used in retailing the bitters to customers, is sufficient to support a finding that defendant was engaged in unfair competition, although there was no proof that any customer had actually been deceived.

2. DEPOSITIONS—MODE OF TAKING.

The fact that a witness on his second examination reads over a copy of his testimony given on a previous examination, and subscribes the same as his deposition, does not render such deposition inadmissible.

3. SAME—OBJECTIONS.

An objection to the admissibility of depositions on the ground of irregularity in taking should be taken by motion to suppress made before the hearing, and where not so taken, although the depositions had been open and on file for a month, an objection to their being read on the hearing was properly overruled.

4. EVIDENCE—PROOF OF INCORPORATION—SUFFICIENCY.

A certified copy of a complainant's charter, supplemented by parol testimony, is sufficient to establish the fact of its being a corporation, as against a denial on information and belief.

5. UNFAIR COMPETITION—DEFENSES—GROUNDS FOR RELIEF.

The preparation known as "Hostetter's Bitters," having been made, sold, and known to the public for many years, has acquired a commercial value which entitles the proprietors to the protection of the courts in its sale, and they will not enter upon the question of its merits, as

---

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper, 30 C. C. A. 376.

¶ 3. See Depositions, vol. 16, Cent. Dig. § 315.

a remedy for the ailments for which it is recommended, at the instance of a defendant who has been engaged in selling a spurious article for the genuine.

Appeal from the Circuit Court of the United States for the Northern District of California.

The appellee, claiming to be the owner of the medicinal preparation known as Hostetter's Bitters, brought a suit against the appellant, charging it with selling as and for the appellee's preparation an article of bitters resembling that of the appellee. The answer put in issue these facts, and, as to the allegation of the corporate existence of the appellee, it averred that the appellant could not "admit or deny the allegations of said bill relative thereto," and it denied, on information and belief, the averment of the bill that the appellee acquired, by purchase from the administrator of David Hostetter or otherwise, the exclusive right to make and sell the preparation described in the bill. The evidence upon which the circuit court sustained the charge of unfair dealing against the appellant was the testimony of two witnesses, Morrison and McEvers, who were in the employment of the appellee. Their testimony was, in substance, that on March 30, 1899, they entered the liquor store of the appellant, where they met Paul Samuel, a salesman, whom they asked if he had Hostetter's Bitters. He answered that he had, and that the price was $8.50 per case. That thereupon McEvers remarked that the price was high, and that there was not much in it to the retailer; whereupon Samuel went into the office, and shortly returned and said: "You fellows ought to buy Hostetter's Bitters in bulk. That is the cheapest way." On being asked if the bitters in bulk were the same as those in cases, Samuel replied: "They are just the same. There is no difference in the bitters at all." That he further said that he sold bitters in bulk at $2.25 a gallon, and that a gallon would make about eight bottles. He then informed them, as they were "new in the business," that he would not handle the Hostetter's Bitters unless he could sell them in bulk, and added that the Hostetter Company sells only to importers in bulk. That Morrison then said: "I will take a half gallon of Hostetter's Bitters." That Samuel then advised Morrison that he could get a Hostetter's Bitters bottle, and then fill it up whenever it got empty. That Morrison then asked if he could get a Hostetter's Bottle at the drug store, and Samuel answered: "You cannot get an empty Hostetter's bottle at the drug store; the junk shop is the place to get that;" and added, "Wait a moment;" and that then he sent for and obtained and delivered to Morrison an empty Hostetter bottle, with the labels and trade-marks of the appellee thereon. The witnesses testified further that on a second visit to the appellant's store, on April 6, 1899, they were met by the same salesman, and that Morrison said, "I want to get some more tokay wine, and $1.25 worth of Hostetter's Bitters, and a half gallon of sherry wine;" and that Samuel said to a man in the store, "Get the wines, and a half gallon of Hostetter's Bitters out of the barrel marked 'H Bitters;'" and that the bitters were placed in the bottle, and tagged "H Bitters;" and that on that occasion Samuel furnished the witnesses an empty Hostetter's Bitters bottle, as before.

R. H. Countryman, for appellant.
Albert H. Clarke and E. Edgar Galbreth, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In view of all the evidence, we cannot say that the circuit court erred in finding that the transaction between the appellant and the witnesses who were sent by the appellee to procure the bitters at its store occurred substantially as detailed in the testimony of those witnesses. It is true that the witnesses were employed by the appellee to obtain

testimony of the unfair dealing of which the appellee suspected the appellant, and for that reason their testimony must be carefully scrutinized. But they made notes of the transactions at the time thereof, and their memory, thus refreshed, may properly have been considered more trustworthy than that of the salesman, Samuel, who testified from his memory of the circumstances a year after their occurrence. Samuel, it is to be noted, did not deny that the appellant had for sale bitters in barrels which it marked "H Bitters," and which were made to resemble, in taste, color, and smell, Hostetter's Bitters. He did not deny that the witnesses asked for Hostetter's Bitters, and that he sold them bitters marked "H Bitters," and that on such occasion he furnished them an empty Hostetter bottle containing the labels and trade-marks of the appellee. These are significant circumstances that may well have influenced the circuit court to give credence to the version which the witnesses Morrison and McEvers gave of the transaction, rather than to that of the appellant's salesman.

But it is urged that, in any view of the facts, there was no evidence that the appellant has defrauded any one, or that any consumer has been deceived into purchasing its bitters believing them to be the preparation of the appellee. It is true that the witnesses who bought the bitters from the appellant were not in the liquor business, and did not intend to sell the bitters in bottles to others, but we think that all the circumstances, taken together, indicate that the appellant was, to some extent at least, in the business of furnishing to retail dealers bitters in bulk, made to simulate Hostetter's Bitters, with the understanding that they were to be placed in the appellee's bottles bearing their label and trade-mark, and to be disposed of to consumers as Hostetter's Bitters. According to the evidence of the two witnesses who bought the goods, Samuel declared that such was the appellant's course of dealing. We think the circuit court may properly have inferred that the transaction with those witnesses was a sample of the appellant's method of vending spurious bitters to retail dealers. Hostetter Co. v. Brueggeman-Reinert Distilling Co. (C. C.) 46 Fed. 188.

It is contended that the court erred in admitting in evidence certain depositions taken by the appellee to prove its incorporation and its title to the preparation which it made and sold as Hostetter's Bitters. The appellee gave notice to take the depositions of certain witnesses on October 13, 1899, at Pittsburg, Pa. By mistake the depositions were not taken on the date named, but were taken on October 9th, the appellant making no appearance. The appellee, finding it necessary to give a second notice to take the depositions, served notice that it would take them at Pittsburg on December 2, 1899. Under the latter notice, the depositions were taken, the appellant making no appearance. It was objected on the trial of the cause in the circuit court that these depositions so taken in December were simply carbon copies of the typewritten depositions taken in October, and that that fact was apparent upon inspection thereof. All this may be true, and yet furnish no ground for suppressing the depositions. No reason is perceived why, upon a second examination of a witness, he may not be permitted to read over a copy of his

prior deposition and subscribe his name thereto as and for his deposition. But if, indeed, the depositions were open to the objection which is urged, the objection came too late when it was made for the first time upon the trial of the cause, more than a month after the depositions had been returned and opened. The motion to suppress should have been made before the hearing in order that the appellee might have had the opportunity, if necessary, to again take the depositions. Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147, and cases there cited.

We think the evidence sufficiently shows that the appellee is the owner of the right and property of compounding and selling the preparation known under the name of Hostetter's Bitters. This is shown by a copy of the assignment and by other evidence. In view of the nature of the denial of the incorporation of the appellee, we deem the evidence in the record sufficient to establish the fact of a corporate existence. It is shown by parol evidence and by a certified copy of its charter. Dutilh v. Coursault, 5 Cranch, C. C. 349, Fed. Cas. No. 4,206; Pierce v. Brown, 7 Wall. 205, 19 L. Ed. 134.

Much of the evidence in the case taken on behalf of the appellant was for the purpose of showing that the appellee's preparation is a quack medicine and an alcoholic stimulant, and therefore not entitled to the protection of a court of equity. Upon the evidence in the case this contention cannot be sustained. The proprietor of such a preparation has the right to keep its formula secret. It appears that for more than 50 years the preparation has been made and compounded in a uniform manner by the appellee and its predecessors in interest, and that it has uniformly received the protection of courts of equity. The record contains the testimony of many physicians who have prescribed the preparation in their practice for the ailments mentioned on the label. It is argued that no one preparation can possibly be a remedy for the numerous and divers ills for which the label declares this preparation to be adapted, and that the evidence for the appellant shows that a preparation containing so large a percentage of alcohol is contraindicated for many of those ailments. The court will not attempt a minute investigation of this field of inquiry. It is one upon which the experts differ. It is enough to advert to the fact that the preparation purports to be a general tonic, and as such efficacious in restoring strength to those weakened by various ailments, and that it has become widely known and largely manufactured and used, and that it has a commercial value. See Hostetter Co. v. Conron (C. C.) 111 Fed. 737, and cases there cited. The argument that it is a quack medicine, and that it is injurious to the human system, and is contraindicated for some of the ailments which it purports to cure, comes with ill grace from those who imitate it as closely as they may without possessing a complete knowledge of its formula, and by unfair trade sell the simulated article as and for the genuine.

We find no ground for disturbing the conclusion of the circuit court. The decree will be affirmed.