ETERNIT, Inc., v. J. J. CLARKE CO., Inc.

District Court, E. D. Louisiana. March 29, 1927.

No. 18684.

1. Courts ⟨⇒263—District Court, having jurisdiction of suit to enjoin infringement of registered trade-mark, is bound to dispose of all issues (Comp. St. § 991; Trade-Mark Act, §§ 17, 19 [Comp. St. §§ 9502, 9504]).

District Court, having jurisdiction, under Judicial Code, § 24 (Comp. St. § 991), and Trade-Mark Act, §§ 17, 19 (Comp. St. §§ 9502, 9504), of suit to enjoin infringement of registered trade-mark and for accounting of profits and treble damages, is bound to dispose of all issues presented.

2. Courts ⟨⇒328(2)—Value of trade-mark alleged to be infringed, and not defendant's profits, determine court's jurisdiction (Trade-Mark Act, §§ 17, 19 [Comp. St. §§ 9502, 9504]).

In suit under Trade-Mark Act, §§ 17, 19 (Comp. St. §§ 9502, 9504), to enjoin infringe-

ment of registered trade-mark, and for accounting of profits and treble damages, value of right alleged to be invaded, the trade-mark, which bill in good faith alleged to be more than $3,000, and not the profits earned by defendants, determine court's jurisdiction.

3. **Trade-marks and trade-names and unfair competition ⊜⟋70(2)—Use of name "Permanit" for foreign-made asbestos shingles, sold as "French Eternit" shingles, held to constitute "infringement" of plaintiff's registered trade-mark "Eternit" (Trade-Mark Act, §§ 17, 19 [Comp. St. §§ 9502, 9504]).**

Defendant dealer's use of name "Permanit," stenciled on asbestos shingles made in France by French corporation, which included in its corporate title the word "Eternit," *held* sufficiently to simulate plaintiff's registered trademark "Eternit," applied to asbestos shingles manufactured in Belgium, to create confusion in minds of consumers and constitute infringement, under Trade-Mark Act, §§ 17, 19 (Comp. St. §§ 9502, 9504), where defendants sold, and solicited orders for, its shingles as "French Eternit" asbestos shingles.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

In Equity. Suit by Eternit, Inc., against the J. J. Clarke Company, Inc. On plaintiff's motion for preliminary injunction. Motion granted.

John May, of New Orleans, La., for complainant.

Dart & Dart and Henry P. Dart, Jr., all of New Orleans, La., for respondent.

BURNS, District Judge. Plaintiff, a Delaware corporation, alleges an infringement of its trade-mark, "Eternit," on asbestos shingles, and unfair competition in the sale thereof by the defendant Louisiana corporation, and prays for relief by injunction restraining defendant from selling or offering for sale any shingles or similar products as "Eternit" shingles, under the name "Eternit" or "Permanit," or any other such near resemblance to "Eternit" as will be liable to deceive the public. The prayer is also for an accounting of profits and treble damages, according to sections 17 and 19 of the Trade-Mark Act (Act Feb. 20, 1905, c. 592, 33 Stat. 729 [Comp. St. §§ 9502, 9504]).

The rule nisi was submitted on affidavits, from which it appears that the defendant is, and for many years has been, engaged in New Orleans in the buying and selling of building material; that the shingles offered for sale by it were bought abroad in two lots during August and November, 1926, from the Société Anonyme Française Eternit, a French corporation of Prouvy, France. The shingles were labeled "Permanit—Made in France."

The plaintiff corporation is the assignee of the American Insulation Company, which, prior to 1924, had been engaged in importing and selling asbestos shingles made in Belgium. The word "Eternit," adopted by that corporation, was registered in the United States Patent Office as a trade-mark, and was continuously used until the assignment to the plaintiff corporation, "Eternit, Inc.," of Pennsylvania. See American Insulation Co. v. Eternit Roofing Corporation et al., 14 F. (2d) 235.

During December, 1926, the defendant company received a letter from a dealer in Natchez, Miss., inquiring for French Eternit asbestos shingles and the price thereof, to which defendant replied that it did handle such shingles and quoted prices on gray, blue, black, and red "Eternit" asbestos shingles, and followed with a second letter, soliciting an order for French Eternit asbestos shingles, to which the dealer responded by ordering "Eternit shingles"—"Gray Hex. Eternit asbestos shingles." When these were shipped, each bundle was stenciled "Permanit—Made in France," and were billed merely as "loose gray asbestos shingles." Similar transactions were had with defendant by a New Orleans dealer, wherein defendant quoted prices on French "Eternit" asbestos shingles. This dealer had specifically mentioned the fact that he was handling Belgian Eternit asbestos shingles. During this negotiation, an agent of defendant exhibited two black and one gray diamond-shaped samples, upon which was lithographed in white upon a red back field the words: "Slates flat and corrugated sheets —Elith-Ste. Ame. Française—Eternit— Prouvy (Nord) France." Upon filling the order given for "gray French Eternit asbestos shingles," they were billed by defendant as such; but the shingles, as in the previous case, were stenciled "Permanit."

Defendant filed two original invoices, covering the two shipments received by them, on bill heads of their French vendor "Société Anonyme Française Eternit," which conspicuously displays the word "Eternit" in large capitals and also a red diamond-shaped figure in each margin with the words: "Société Anonyme Française, Eternit, Prouvy Nord." No claim is made on behalf of defendant that this French corporation or itself has any right to the use of the word "Eternit" as a trademark in the United States by virtue of registry or otherwise.

The defense is that the sales and offers to sell were made under the description and name "French Eternit asbestos shingle" and "Permanit," were in good faith, and were jus-

tified by the fact that the purchases abroad were made in the usual course of trade; that it has never offered or sold asbestos shingles as being "Eternit" or "Eternit made in Belgium," and has said or done nothing that would deceive the public; that there is no confusing similarity between the two names, and that they have an absolute right to continue to offer and sell shingles under the name "Permanit" and "French Eternit asbestos shingles." Moreover, in support of exceptions to the jurisdiction of this court of the unfair competition issue raised by plaintiff, the defendant urges that the profit earned by it on the sales so far made is less than $3,000, and that this, and not the value of plaintiff's trade-mark, is the test of jurisdiction.

[1, 2] I am persuaded that, being seized of jurisdiction of the suit by virtue of section 24 of the Judicial Code (Comp. St. § 991), and by sections 17 and 19 of the Trade-Mark Act (Comp. St. §§ 9502, 9504), this court is bound to dispose of all the issues presented, more especially since it is the value of the right which is alleged to be invaded that determines the jurisdiction, and the bill, in good faith, alleges this to be more than $3,000. Harris v. Brown (D. C.) 6 F.(2d) 922; Lambert v. Yellowley (C. C. A.) 4 F.(2d) 915; Local No. 7 v. Bowen (D. C.) 278 F. 271, 273; Symonds v. Green (C. C.) 28 F. 834; Hennessy v. Hermann (C. C.) 89 F. 669.

[3] Whilst it is true that the shingles sold by defendant are stenciled "Permanit" and are made in France, whereas those sold by plaintiff are sold as "Eternit" and are made in Belgium, and there is no similarity in sound in the names, except in the final syllable, and no similarity in character, except in the suggestion of the everlasting, eternal, or permanent quality of the shingles, which are both made of asbestos and designed for the same use, I conclude that confusion is created in the mind of the consumer; that the one word is sufficiently a simulation of the other to constitute an infringement, in view of the defendant's method of soliciting, offering, and selling its product as "Eternit," and not revealing the name "Permanit" until after delivery, and then only by the stencil marks thereon.

This conscious, purposeful omission is all the more emphasized by the final billing of the product to consumers and dealers as "French Eternit" asbestos shingles. The only justification pleaded is the fact that in the corporate title of the French company the word "Eternit" appears. We are not concerned here with the rights of the foreign manufacturers, respectively, in Belgium and France. Neither

18 F.(2d)—39

of them are parties to this suit, and it does not appear that they have any interest in the rights of plaintiff under its domestic trade-mark. Since the products are both of foreign manufacture, it is to be assumed that the Treasury Department, through the collector of customs, will consider the effect of section 27 of the Trade-Mark Act (Comp. St. § 9513).

As between the domestic parties to this suit, I am of the opinion that the defendant began dealing in the French asbestos shingles for the express purpose of making use of plaintiff's valuable rights under its trade-mark "Eternit." See Bourjois & Co. v. Katzee, 260 U. S. 689, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567.

Accordingly a decree may be entered in favor of plaintiff, and a preliminary injunction will issue as prayed for.