## HOSTETTER CO. v. MARTINONI.

(Circuit Court, N. D. California.   July 8, 1901.)

### No. 12,780.

1. TRADE-MARK—UNFAIR COMPETITION—INJUNCTION.
   There is a fraud on complainant, entitling it to injunction, it having the exclusive right to the name "Hostetter" as applied to bitters, and defendant, on inquiry being made for Hostetter's Bitters and objection made to the price named, having stated that he could sell Hostetter's Bitters in bulk at a less price, and having thereon furnished bitters not made by complainant, in a demijohn marked "H. Bitters," and having on another occasion, when the bulk bitters were called for, furnished an empty Hostetter's Bitters bottle and filled it therewith.[1]

2. SAME—MERIT—PRESUMPTION.
   Hostetter's Bitters presumptively have merit, entitling the owner to protection against unfair competition, having been sold for years with an increasing demand.

In Equity.   Suit for infringement of trade-mark.

Albert H. Clarke and E. Edgar Galbreth, for complainant.
Morrison & Cope, for defendant.

MORROW, Circuit Judge.   This is a suit in equity, brought by the complainant, a Pennsylvania corporation, against the defendant, a citizen of California, to enjoin him from manufacturing, selling, or offering for sale, directly or indirectly, any article of stomach bitters as and for, or in the name of, "Hostetter's Celebrated Stomach Bitters," "Hostetter's Bitters," "Hostetter," "Host," or "H. Bitters," or from using in any way any of said names in connection with the selling of any article of stomach bitters not manufactured by com-plainant.   It is alleged that the complainant, on May 1, 1889, ac-quired by purchase the right to make and sell the compound known by the above names, and has the exclusive right to the name "Hos-tetter," and the abbreviations thereof, as used in connection with the

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C C. A. 376.

compounding and sale of stomach bitters, as a trade-name; that said stomach bitters have been since May 1, 1889, and for over 30 years before said date, by complainant's predecessor, put up and sold in square, amber-colored bottles, holding nearly a quart, with the words "Dr. J. Hostetter's Stomach Bitters" blown in the glass, and having on two sides of said bottles certain descriptive labels (which have been duly registered as trade-marks in the patent office); that said bottles, when filled with the said preparation and sealed, are packed in boxes containing one dozen each, and in this condition are sold to the trade generally; that the said preparation is never sold in bulk or by the gallon, or in any manner except as just described. It is further alleged that said preparation has become well known to the public, and that the good will of complainant's business in the manufacture and sale of said stomach bitters is of the value of over $1,000,000. Complainant charges defendant with fraud and unfair dealing in selling at his place of business an imitation article of stomach bitters purporting to be that made by complainant, whereby complainant has been damaged in the sum of $6,000. The fraud and unfair dealing is specifically stated to consist in the following acts: When an intending purchaser calls at defendant's place of business, and demands to be sold Hostetter's Stomach Bitters, the defendant sells to him stomach bitters resembling the bitters made by complainant, by the gallon, in demijohns, at $2 per gallon, billing the same as "H. Bitters," and also refills with defendant's bulk bitters the bottles of complainant which once contained the genuine Hostetter's Bitters, and still retain the original labels thereon, selling such refilled bottles at 35 cents per bottle. The defendant enters a denial to these specific charges, and, in turn, alleges that complainant is not entitled to any protection in this court, for the reason that the several names by which said preparation is known to the trade are merely descriptive of a certain kind or quality of bitters, made according to a formula for many years known to pharmacists and chemists, and that complainant has no proprietary interest in, or exclusive right to, said formula, and, further, that complainant is itself guilty of fraud, in knowingly and willfully placing upon the market as a medicinal preparation of value said bitters, when in reality the bitters are of no value whatever, save as an intoxicating beverage.

With regard to the first contention of the defendant, whether the names by which complainant's preparation are known to the trade are merely descriptive or not, the complainant's rights to the benefits arising from the high reputation of the preparation designated by such names, gained by the efforts of complainant and its predecessors through many years, is undoubted. It is a fundamental principle of the law that one cannot make use of a reputation which another has acquired in a trade name or mark for the purpose of deriving such advantage in the manufacture and sale of the goods as arises from the good will and reputation of the original manufacture. Courts demand a high order of commercial integrity in the use by competitors of a name under which a rival has gained a business reputation, whether that name is strictly a trade-mark or is descriptive of quality merely, and frown upon all filching attempts to obtain the reputation

of another. Fuller v. Huff, 43 C. C. A. 453, 104 Fed. 141, 51 L. R. A. 332, and cases cited. Did, then, the defendant wrongfully attempt to use the reputation of complainant's preparation for his own advantage? It appears from the testimony that two of the complainant's employés went to the defendant's place of business, and asked for Hostetter's Bitters. Upon the price being named (70 cents a bottle, by the case), they remarked that it was pretty high. The defendant's salesman then stated that he could sell them Hostetter's Bitters in bulk at $2 per gallon, that they made barrels of it, and that it was a fine article. Complainant's employés offered to purchase a half a gallon at this rate, whereupon the salesman went to the back part of the store and told a man there to fill a half-gallon demijohn with "H. Bitters." A demijohn was filled with bitters from a keg, and a tag attached to it, reading as follows: "E. Martinoni, importer and dealer in wines, liquors, and cordials, 714–716–718 Front St., San Francisco, California. H. Bitters." The word "Bitters" was stamped upon the tag with a rubber stamp, apparently, and the letter "H" written in front of the word "Bitters" in pencil. This was written upon the tag by the man who filled the demijohn. This proceeding was repeated a few days later, complainant's employés then also asking for an empty bottle. The defendant's salesman inquired whether a Hostetter's Bitters bottle was desired, and, upon receiving an affirmative reply, brought forward an empty Hostetter's Bitters bottle, with the original labels thereon and proper revenue stamps. He offered to fill the bottle with the bitters sold in bulk, and upon the agreement of his customers did so, filling it from the same keg from which they had purchased the half gallon of H. Bitters, and charging them 35 cents therefor. In each instance the salesman had a bill made out for the article purchased; the bitters contained in the demijohn being described as "½ gal. H. Bitters," and the filled Hostetter's bottle as "1 bottle Bitters." The bitters purchased on these occasions and in the manner stated were not manufactured by complainant. No other deduction can be made from this evidence than that the defendant was attempting to palm off upon its customers goods of its own manufacture as and for the goods of the complainant. This is undoubtedly a fraud upon the complainant's rights, regardless of the comparative quality of the two preparations.

And with regard to defendant's second contention, that the complainant's preparation is of no value whatever, save as an intoxicating beverage, this statement appears to come at a rather late hour, considering the number of years it has been before the public and the numerous lawsuits in which it has been involved, wherein such a proposition would undoubtedly have arisen and been determined, if meriting attention. The fact of its being alcoholic to a certain extent cannot be unknown to the public, as the very word "bitters" can only be defined as "a liquor, generally spirituous, in which bitter herbs or roots are steeped." While the precise formula is claimed as a trade secret by complainant, analyses show the preparation to contain certain solid extracts having medicinal properties. Experts upon any subject are prone to conflicting opinions in this day of evolving

theories and progressive research, and the medical experts testifying in this case exhibit this general characteristic. But the court need only concern itself with inquiry as to the merits of the preparation to the extent of discovering whether it has sufficient merit to justify the court in protecting complainant's rights therein, whether complainant has come into court with clean hands, under the fundamental principle that he who seeks equity must do equity. The preparation is designed for the use of the public. The public has tested it for a great number of years, and has stamped it with its seal of approval, as evidenced by the increased demand for the preparation. This is certainly proof of its commercial value, and presumably establishes the fact that it possesses merit. In the case of Hostetter Co. v. Wm. Schneider Wholesale Wine & Liquor Co., 107 Fed. 705, in the United States circuit court for the Eastern division of the Eastern district of Missouri, a state of facts existed similar to those in the case at bar. An injunction was granted; the court, in handing down its decree (November 8, 1900), stating that such a state of facts presented "a clear case of unfair competition in trade, and the doctrine rests squarely upon the proposition that men must be honest in their business transactions and rely upon the merits of their own goods, and not undertake to palm off inferior goods as and for goods of the genuine manufacturer." To the same effect is Hostetter Co. v. Sommers (C. C.) 84 Fed. 333. The court is of the opinion that this decision is correct, and that the injunction prayed for in the present case should be granted. Let a decree issue accordingly, and the case be referred to the master in chancery for the proper accounting.